**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD A. SALAH, | ) | |
| | ) | CASE NO. 1:12CV2104 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JAMES GWIN |
| | ) | |
| | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff Richard A. Salah ("Salah") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for a period of disability ("POD"), disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and the case REMANDED.

**I. Procedural History**

On September 26, 2008, Salah filed applications for POD, DIB, and SSI, alleging a disability onset date of September 5, 2008 and claiming he was disabled due to a herniated disc, back problems, spinal problems, and anxiety panic disorder. (Tr. 148-153, 187.) His

applications were denied both initially and upon reconsideration.

On November 30, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Salah, represented by counsel, and both a medical expert ("ME") and vocational expert ("VE") testified. (Tr. 31-83.) At the hearing, Salah amended his alleged disability onset date to October 15, 2009. (Tr. 35-36.) On January 14, 2011, the ALJ found Salah was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 14-23.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1.)

## II. Evidence

*Personal and Vocational Evidence*

Age 48 at the time of his administrative hearing, Salah is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). He graduated from high school and completed three years of college. (Tr. 73, 192.) He testified to past relevant work as an electrician. (Tr. 41, 73, 187-188.)

*Hearing Testimony*

At the November 30, 2010 hearing, Salah testified to the following:

- He is divorced with four children, ages 12, 16, 25, and 26. His children do not live with him because he does not have permanent housing. He has been living at a men's shelter, on and off, for the past two years. (Tr. 39-40.)

- He sustained injuries to his spine and the back of his head while working as an electrician in November 2007. He continued to work until November 2008, but was then let go because he was missing a lot of work and his "performance was really down." (Tr. 41-43.)

- He worked for parts of 2009 and 2010 at jobs obtained through temporary agencies. These jobs mainly involved sitting down. He was able to perform these jobs because he was allowed to sit down and stand up whenever he wanted. After awhile, however, he "just couldn't do it" anymore. He was missing work one to two times per week and experiencing severe pain in his back and legs. (Tr. 44-48,

50, 56-57.)

- His biggest impairment is his back pain. (Tr. 49.) He can sit and stand for 10 to 15 minutes, each, at one time.  After that, "it gets unbearable where I feel like I'm going to rip my head off." (Tr. 50.)  He has been using a cane for the past seven months.  He has fallen down many times because of weakness in his legs.  He cannot bend over or lift anything over 10 pounds. (Tr. 56-60.)

- He also cannot work because of his blood pressure and breathing problems. (Tr. 50.)

- He takes a number of medications, including Clonodine, Lopressor, Zocor, Albuterol, Xanax, Celebrex, Soma, Neurontin, Hydrocodone, Ibuprofen 600, Ambien, and Nexium.  The medications no longer help with his pain. (Tr. 48-49.)

The ME testified that Salah had the following severe impairments: lower back pain, hypertension, and COPD. (Tr. 63, 65-66.)[1]  He did not believe any of Salah's physical impairments met or equaled any listing. (Tr. 62.)  He opined that Salah is capable of performing light work with the following work restrictions:  (1) a sit/stand option; (2) lifting 10 pounds frequently and 20 pounds occasionally; (3) occasional bending and stooping; (3) no ladders, scaffolds, and ropes; (4) occasional use of stairs and ramps; (5) no repetitive lifting below the waist; (6) no heights and hazardous machinery; and (7) no concentrated exposure to dust, fumes, gases and temperature extremes. (Tr. 65, 67-70.)  He did not express an opinion as to how long Salah could sit, stand, or walk. (Tr. 69.)

After the VE described Salah's past relevant work as an electrician, the ALJ posed a series of hypotheticals.  The first hypothetical assumed a person of the claimant's age, education and work experience who is able to do light work with: a sit/stand option; occasional stooping, kneeling, crouching and crawling; occasional ramps and stairs; never climbing ladders, ropes, or

---

[1] The ME, an orthopedic surgeon, declined to express an opinion regarding whether any of Salah's mental impairments were "severe" for social security purposes. (Tr. 61, 66-67.)

scaffolds; no repetitive lifting below the waist; no heights and hazardous machinery; and no concentrated exposure to fumes, odors, dust, gas, poorly ventilated areas, and temperature extremes. (Tr. 74-75.)  The VE testified that such a hypothetical claimant could not return to past relevant work as an electrician and would have transferable skills only to similarly eliminated electrical jobs. (Tr. 76.)  The VE further testified that such an individual could, however, work as an office helper, photo copying machine operator, and mail clerk. (Tr. 77.)

The ALJ then explained the second hypothetical claimant had the same restrictions as the first, but with the additional restriction of being limited to simple and routine tasks, and precluded from tasks that involve high production quotas and strict time requirements. (Tr. 77.) The VE testified that such a claimant could not return to past relevant work as an electrician, but could perform the same work as under the first hypothetical. (Tr. 78.)

For the third hypothetical claimant, the ALJ explained it was the same as the first hypothetical but, instead of light work, this claimant would be restricted to sedentary work.  (Tr. 78.)  The VE testified that such an individual could work as a charge account clerk, food and beverage order clerk, and addressor. (Tr. 78.)

The ALJ indicated the fourth hypothetical claimant had the same restrictions as the second hypothetical claimant but, instead of light work, this claimant would be restricted to sedentary work with the additional restrictions that he is limited to simple, routine tasks and no high production quotas. (Tr. 79.)  The VE testified that such an individual could work as a charge account clerk, food and beverage order clerk, and addressor. (Tr. 79.)

Finally, Salah's attorney asked the VE to assume the ALJ's first hypothetical but add the limitation that the individual would only be able to sit for one to two hours per day, and

4

stand/walk for one to two hours per day. (Tr. 80-81.) The VE testified that this additional restriction would eliminate all jobs, both sedentary and light work. (Tr. 81.) Salah's attorney then asked the VE to again assume the first hypothetical but add the limitation that the individual would miss four or more days of work per month. (Tr. 81.) The VE testified there would be no jobs for such an individual. (Tr. 81.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Salah was insured on his amended disability onset date of October 15, 2009, and

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

5

remained insured through the date of the ALJ's decision, January 14, 2011. (Tr. 14.) Therefore, in order to be entitled to DIB, Salah must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Salah established medically determinable, severe impairments, due to "adjustment disorder with mixed anxiety and depression, panic disorder with mild agoraphobia, degenerative disc disease of the lumbar spine, hypertension, and chronic obstructive pulmonary disease ("COPD")." (Tr. 16.) However, his impairments did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings 1.04, 3.02, 12.04, 12.06). (Tr. 17.) Salah was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 18.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Salah was not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.

*See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported

7

by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Listing 1.04*

Salah argues the ALJ improperly ignored objective medical evidence indicating that he met or equaled Listing 1.04, which relates to disorders of the spine. He argues the ALJ's decision on this issue is conclusory and "completely irreconcilable" with the medical evidence, including MRIs of his lumbar spine from October 2009 and August 2010. (Doc. No. 15 at 9-10.)

The Commissioner maintains Salah failed to satisfy his burden of demonstrating this impairment was of listing-level severity for a continuous period of twelve months. He disputes Salah's characterization of the medical evidence as indicating his impairment met or equaled Listing 1.04 and argues "no MRI or any other diagnostic shows each of the[] signs" in that

8

Listing.  The Commissioner also emphasizes the ME's hearing testimony that none of Salah's physical impairments met or equaled any listing.  (Doc. No. 16 at 11-12.)

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the Listing of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec*., 2010 WL 2294531 at * 3 (6th Cir.  June 7, 2010).  The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 404.1525(a), 416.925(a).  In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).  A claimant must satisfy all of the criteria to "meet" the listing.  *Id*.; *Rabbers v. Comm'r of Soc. Sec*., 582 F.3d 647, 652 (6th Cir. 2009).  However, a claimant is also disabled if his impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 404.1526(a), 416.926(a).  An ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *See Reynolds v. Comm'r of Soc. Sec*., 2011 WL 1228165 at * 3-4 (6th Cir. April 1, 2011); *Hunter v. Comm'r of Soc. Sec.*, 2011 WL 6440762 at * 3-4 (N.D. Ohio Dec. 20, 2011).  In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for his

9

decision. *See Reynolds,* 2011 WL 1228165 at * 4-5; *Marok v. Astrue*, 2010 WL 2294056 at *3 (N.D. Ohio Jun. 3, 2010); *Waller v. Comm'r of Soc. Sec.*, 2012 WL 6771844 at * 3 (N.D. Ohio Dec. 7, 2012); *Keyes v. Astrue*, 2012 WL 832576 at * 5-6 (N.D. Ohio March 12, 2012).

Here, Salah presented evidence that he sustained multiple workplace back injuries, the first of which appears to have occurred in December 2007. An X-ray taken on December 2, 2007 indicates partial lumbarization of S1 and mild degenerative disc disease in the lower lumbar spine. (Tr. 292-293.) After a subsequent workplace injury in July 2008, Salah underwent an MRI of his lumbar spine. (Tr. 280, 295-296.) This MRI, conducted in September 2008, indicated lumbarization of the S1; degenerative disc disease; mild bilateral foraminal compromise of the L3 and mild associated nerve root impingement (left); moderate bilateral foraminal compromise of the L4 and moderate associated nerve root impingement bilaterally; and mild/moderate nerve root impingement of the L5 (right). (Tr. 295-296.)

During physical exams from 2008 through 2010, Salah complained repeatedly of lower back pain and shooting pain and weakness in his legs. (Tr. 298-299, 302-305, 342, 364-367, 427-429, 461- 463, 478-490, 544.) Treatment notes during this time period indicate tenderness on lumbar spinal palpation and restricted lumbar ranges of motion. (Tr. 298-299, 342, 364-367, 478-485.) An MRI of the lumbar spine taken October 15, 2009 indicated multilevel degenerative changes; diffuse disc bulge with central annular tear at L3-4, L4-5 and L5-S1; and mild impingement of the existing L5 nerve root. (Tr. 384-385.) A subsequent MRI in August 2010 showed moderate/severe foraminal narrowing at L5-S1; stable or mildly increased Type I degenerative endplate change at the right aspect of L5-S1; and stable small posterior protrusions at L3-4 and L4-5. (Tr. 450-451.)

Over the years, Salah's treatment consisted of pain medication, muscle relaxants, anti-inflammatories, physical therapy and chiropractic treatment. (Tr. 299-300, 302-316, 344-346, 364-367, 379, 427-429.)[3] At least one of his treatment providers, Nicholas Hadzima, D.C., indicated Salah should be evaluated for surgery; however, the parties do not cite any evidence indicating this occurred. (Tr. 483, 486, 498.)

Based on the above, and additional medical evidence regarding his other impairments, the ALJ determined at step two of the sequential evaluation process that Salah suffers from several severe impairments: degenerative disc disease of the lumbar spine, hypertension, COPD, adjustment disorder with mixed anxiety and depression, and panic disorder with mild agoraphobia. (Tr. 16.) Thus, at step three, the ALJ was required to consider whether Salah's mental and physical impairments, alone or in combination, met or equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1.

At the ALJ hearing, Salah argued that his spinal impairment equaled Listing 1.04. (Tr. 36-37.) This Listing provides as follows:

> **1.04** *Disorders of the spine* (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal code. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

---

[3] The record also contains medical evidence regarding Salah's hypertension, COPD, and mental impairments. As Salah does not contest the ALJ's findings regarding these conditions, the Court will not recount this medical evidence herein.

11

20 C.F.R. Part 404, Subpart P, App. 1.

In conducting his step three analysis, the ALJ began by stating that he had "considered all of the claimant's impairments individually and in combination but can find no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings." (Tr. 17.)  He then noted generally that "[t]he medical expert at the hearing testified that the claimant does not meet or equal any of the Listings." (Tr. 17.)  He then conducted an analysis of Salah's mental impairments, in which he noted the relevant listings and assessed Salah's functioning in the areas of "activities in daily living," "social functioning," "concentration, persistence, or pace," and "decompensation." (Tr. 17-18.)

With regard to Salah's severe spinal impairment, the ALJ stated only that: "The medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under Listing 1.04 (disorders of the spine).  Moreover, there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b)." (Tr. 17.)  The ALJ does not provide any further step three analysis of Salah's severe spinal impairment.  Notably, the decision does not discuss the medical evidence concerning this impairment and compare it to the criteria for Listing 1.04, nor does it explain how the evidence fails to met or equal that Listing.  Rather, the ALJ decision simply states, summarily and without explanation, that unspecified medical records regarding Salah's severe spinal impairment do not establish "the requisite evidence" required under Listing 1.04.

In this regard, the instant case is analogous to *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 (6th Cir. April 1, 2011).  In *Reynolds*, the ALJ determined at step two of the sequential

evaluation process that the claimant had both severe physical and mental impairments. At step three, the ALJ conducted a thorough analysis of the claimant's mental impairment but "[n]o analysis whatsoever was done as to whether Reynolds' physical impairments (all summed up in his finding of a severe 'back pain' impairment) met or equaled a Listing under Section 1.00, despite his introduction concluding that they did not." *Id*. at * 3. The Sixth Circuit found this was reversible error, explaining that:

> Ultimately, the ALJ erred by failing to analyze Reynolds' physical condition in relation to the Listed Impairments. Put simply, he skipped an entire step of the necessary analysis. He was required to assess whether Reynolds met or equaled a Listed Impairment . . . but did not do so.
>
> * * *
>
> The ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary. 20 C.F.R. § 404.1520(a)(4)(iii). Therefore, if the ALJ had properly analyzed Step Three, and had found Reynolds met Listing 1.04, she would receive benefits regardless of what the ALJ's conclusion would have been at Steps Four and Five. Additionally, in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing.
>
> **In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and given an explained conclusion, in order to facilitate meaningful judicial review.** Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Burnett v. Comm'r of Soc. Sec*., 220 F.3d 112, 120 (3rd Cir. 2000). As the Third Circuit explained, "[b]ecause we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning" supporting the determination that Reynolds' severe impairments do not meet or medically equal a listed impairment. *Burnett*, 220 F.3d at 120.

*Id.* at * 3-4 (emphasis added). Since *Reynolds*, numerous district courts have vacated and

remanded ALJ decisions because of the failure to conduct a meaningful step three analysis which evaluates the medical evidence, compares it to the applicable listing, and provides an "explained conclusion" as to why the claimant's impairments fail to meet or equal a listed impairment.  *See e.g. Waller v. Astrue*, 2012 WL 6771844 at * 2-5 (N.D. Ohio Dec. 7, 2012) *adopted*, 2013 WL 57046 (N.D. Ohio Jan. 3, 2013); *May v. Astrue*, 2011 WL 3490186 at * 7-10 (N.D. Ohio June 1, 2011) *adopted*, 2011 WL 3490229 (N.D. Ohio Aug. 10, 2011); *Keyes v. Astrue*, 2012 WL 832576 at * 5-6 (N.D. Ohio March 12, 2012); *Hunter v. Astrue*, 2011 WL 6440762 at * 3- 4 (N.D. Ohio Dec. 20, 2011); *Marok v. Astrue*, 2010 WL 2294056 at * 5 (N.D. Ohio June 3, 2010); *Hakkarainen v. Astrue*, 2012 WL 398595 at * 10-13 (N.D. Ohio Jan. 19, 2012) *adopted* 2012 WL 396970 (N.D. Ohio Feb. 7, 2012); *Shea v. Astrue*, 2012 WL 967088 at * 8-11 (N.D. Ohio Feb. 13, 2012) *adopted* 2012 WL 967072 (N.D. Ohio March 21, 2012).

In the instant case, the ALJ failed to sufficiently articulate how he reached his conclusion that Salah's spinal impairment did not meet or equal a Listed Impairment.  The decision states that the ALJ considered Listing 1.04, but does not discuss the requirements a claimant must meet or medically equal to satisfy that Listing or compare those requirements with the medical evidence of record.  While the decision does make passing reference to the ME's hearing testimony that Salah's impairments did not meet or equal "any of the listings, " the Court finds this is insufficient to satisfy the ALJ's duty to discuss the evidence and provide an "explained conclusion."  *Reynolds*,  2011 WL 1228165 at * 4.  The ALJ does not discuss in any detail the content of the ME's testimony, nor does he attempt to reconcile the ME's opinion on this issue with the medical evidence of record (including the results of Salah's October 2009 and August 2010 MRIs) in the context of the requirements of Listing 1.04.  The ALJ's step three analysis fails

to provide an articulate discussion of the medical evidence in relation to the listing requirements, thus depriving the Court of a meaningful opportunity for judicial review. Other district courts in this Circuit have reached the same conclusion under similar circumstances. *See Marok*, 2010 WL 2294046 at * 4-5 (finding ALJ's passing reference to ME testimony that claimant did not meet a Listing was insufficient to describe the reasons for his step three determination because "[t]o decipher what the medical expert said, the reader must travel back to the transcript – something not immediately accessible to the typical reader, including [claimant]"); *Shea*, 2012 WL 967088 at * 10-11 (finding step three analysis insufficient when ALJ mentioned, without describing, the findings and opinions of "treating or examining physicians" and "State agency medical consultants" to find claimant did not meet Listing).

The Commissioner argues the ALJ's step three determination should be upheld because the medical evidence does not establish that Salah's spinal impairment satisfied the criteria for Listing 1.04. The Commissioner refers to specific medical evidence in the record in support of his position. (Doc. No. 16 at 11-12.) Unfortunately, the ALJ included no such analysis in the decision and the Court cannot engage in *post hoc* rationalizations. *See S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947) (a reviewing court must judge the propriety of agency action "solely by the grounds invoked by the agency"). As this Court has previously observed, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *Waller*, 2012 WL 6771844 at * 3. *See also May*, 2011 WL 3490186 at * 9.

Moreover, the ALJ's failure to explain how he reached his conclusion that Salah's spinal impairments do not meet or medically equal a Listing is not harmless error because, if Salah is

found to meet a Listed Impairment, he would be disabled within the meaning of the regulations and entitled to benefits without any further additional analysis. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Reynolds*, 2011 WL 1228165 at * 4.  Further, the Court notes that Salah did submit medical evidence regarding mild nerve root compression, limited range of motion of the spine, muscle weakness, and inconsistent straight leg examinations. (Tr. 295-296, 298-299, 302-305, 336, 342, 348, 364-367, 384-385, 427-429, 461-463, 478-490, 497, 502,  544).  Thus, this is not a case where the record is devoid of any medical evidence that might possibly support a finding of listing-level severity.

In sum, the Court finds the ALJ failed to evaluate the medical evidence regarding Salah's severe spinal impairment and compare it to the requirements for Listing 1.04.  As such, the ALJ's decision deprives this Court of any ability to conduct a meaningful review as to whether the regulations were followed.  Because the Court cannot discern the reasons for the ALJ's decision, it is recommended that this matter be remanded for a more thorough step three determination regarding Salah's spinal impairment.

### *Dr. Hadzima*

Salah asserts the ALJ did not accord proper weight to the opinion of his chiropractor, Dr. Hadzima.  In May 2010, Dr. Hadzima completed a "Physical Capacities Evaluation," in which he opined that Salah was limited to sitting, standing, and walking for one to two hours each. (Tr. 405.)  He also opined that Plaintiff needed an assistive device to ambulate; could occasionally to frequently perform gross or fine manipulation; and could never push, pull, climb, balance, bend, stoop, reach, operate a motor vehicle, or be exposed to hazardous machinery. (Tr. 405.)  Dr. Hadzima also opined Salah would miss more than four days of work each month. (Tr. 405.)

16

> The ALJ formulated Salah's RFC as follows:
>
> After careful consideration of the record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) consisting of occasional lifting and/or carrying of twenty pounds with frequent lifting and/or carrying of ten pounds. The claimant is limited to work involving occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. The claimant is restricted from work involving climbing of ladders, ropes, and/or scaffolds. The claimant is restricted from work involving repetitive lifting below the waist. The claimant is restricted from work involving concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, and extremes in temperatures. The claimant is restricted from work involving exposure to workplace hazards such as heights and dangerous machinery. The claimant is further limited to work involving simple and routine tasks, and is precluded from work tasks that involve high production quotas and strict time requirements.

(Tr. 18.) In crafting this RFC, the ALJ gave "little to no weight" to Dr. Hadzima's opinion, explaining that "[t]he evidence of record does not support his opinion and there is no showing as to what his opinion is based on. Furthermore, there is no objective medical evidence to support his opinion that the claimant is likely to miss more than four days per month from work." (Tr. 20.)

In light of remand being found otherwise necessary, the Court will not consider Salah's argument that the ALJ erred in according "little to no weight" to Dr. Hadzima's opinions. Furthermore, on remand, the ALJ's evaluation of the evidence under step three might impact his findings under the remaining steps of the sequential analysis. *Reynolds*, 2011 WL 1228165 at * 5. Nevertheless, the Court notes the following. Although chiropractors are not "acceptable medical sources" under 20 C.F.R. §§ 404.1513(a) and 416.913(a) (and ALJs are therefore not required to give "good reasons" for rejecting their opinions under the treating physician rule), Social Security Ruling 06-03P notes that information from "other sources" such as chiropractors "are important" and "may provide insight into the severity of the impairment(s) and how it affects

17

the individual's ability to function." SSR 06-03P, 2006 WL 2329939 at * 2 -3 (Aug. 9, 2006). Interpreting this SSR, the Sixth Circuit has found that opinions from "other sources" who have seen the claimant in their professional capacity "should be evaluated using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) ("Following SSR 06-03P, the ALJ should have discussed the factors relating to his treatment of [nurse practitioner] Hasselle's assessment, so as to have provided some basis for why he was rejecting the opinion"). *See also McKitrick v. Comm'r of Soc. Sec.,* 2011 WL 6939330 at * 12-13 (N.D. Ohio Dec. 30, 2011); *Kerlin v. Astrue*, 2010 WL 3937423 at * 7 (S.D. Ohio March 25, 2010).

Should the ALJ determine on remand that Salah's impairments do not meet or equal Listing 1.04 under step three and proceed to the remaining steps of the sequential evaluation process, the Court notes that the ALJ should be mindful of the requirements of SSR 06-03P and *Cruse* in evaluating the weight, if any, to be given to Dr. Hadzima's opinions.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner is not supported by substantial evidence. Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings consistent with this Report and Recommendation.

s/ Greg White
United States Magistrate Judge

Date: June 19, 2013

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.**  *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).**  *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**